GEORGE F. HADLEY vs. HILLCREST DAIRY, INC.

Worcester.    September 27, 1960. — January 9, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Sale*, Warranty, Bottle.  *Contract*, Of sale.  *Negligence*, Bottle, Res ipsa
loquitur.

Whether a sale of milk delivered to the buyer in a glass jug included an
outright sale of the jug also or the jug was merely lent to the buyer
to be returned when the milk had been consumed, the seller impliedly
warranted to the buyer the fitness and merchantability of the jug under
G. L. c. 106, § 17 (1), (2).   [627]

Breach of the implied warranties of fitness and merchantability of a glass
jug in which milk was sold and delivered might properly be found
where, a few days after the delivery, the jug shattered in the buyer's
hand and injured him without having been mishandled since its de-
livery.   [629]

A finding of negligence on the part of a seller toward the buyer of milk
delivered in a glass jug was not warranted on evidence merely that, a
few days after the delivery, the jug shattered in the hand of the buyer
and injured him without having been mishandled since the delivery,
where it appeared that the seller had not manufactured the jug and
there was no evidence that he could have discovered the defect therein
by a reasonable and practicable inspection.   [629–631]

CONTRACT OR TORT.   Writ in the Superior Court dated
May 20, 1958.

The action was tried before *R. Sullivan*, J., who allowed
the defendant's motion for a directed verdict.   The plain-
tiff alleged exceptions.

*Francis T. Mullin*, for the plaintiff.
*Francis W. Conlin*, for the defendant.

SPALDING, J.   The plaintiff testified as follows:  On Octo-
ber 12, 1957, a route salesman of the defendant delivered
three one-half gallon glass jugs of milk to the plaintiff's
house in Leicester.   The salesman placed the milk on a
shelf inside the kitchen door.   The plaintiff paid for the
milk but "as far as he knew there was no special charge

Hadley *v.* Hillcrest Dairy, Inc.

. . . for the . . . container.'' Thereafter, the plaintiff's wife put the milk into the refrigerator. Some of the milk was used on the day it was delivered, and some of it was used the following day. On Wednesday, October 16, the plaintiff opened the refrigerator door and took out a one-half gallon jug of milk. As he was placing it on a table ''it shattered and cut his right thumb and injured his right hand.'' The ''glass went into his hand'' as he set the jug down. At the time of the accident the plaintiff held the container ''by the neck, . . . where the round part goes into the length of the bottle.'' There was ''a piece that had shattered off'' and this pierced his hand. The plaintiff ''noticed that the glass was variable in thickness and that the jug broke up and down . . . [its] length.'' The jug bore the words ''Hillcrest Dairy Farms—quality checked.'' From the time that the milk was delivered at his house until the time of the accident, the plaintiff did not strike the jug against anything. None of his children touched the jug, and the plaintiff ''did not see his wife strike the jug or hit it against any object.'' Several days after the accident, following his discharge from a hospital, the plaintiff called the defendant's manager and informed him of the accident.[1]

The plaintiff's wife testified that between the time of its delivery and the accident the jug which broke was ''handled by nobody except herself and her husband''; and that she never hit the jug against anything while handling it.

After the introduction of the foregoing evidence, the defendant moved for a directed verdict, and the motion was allowed. The questions for decision arise out of the plaintiff's exception to this ruling.

The plaintiff's declaration contains three counts. The first alleges breach of an implied warranty of fitness; the second, breach of an implied warranty of merchantability; and the third is in tort for negligence.

1. We are of opinion that the plaintiff was entitled to go

---

[1] There were subsequent talks with the defendant's manager but these need not concern us, for the defendant does not contend that the plaintiff failed to give notice of breach of warranty. See G. L. c. 106, § 38, which governed the transaction.

to the jury on the first and second counts. See G. L. c. 106, § 17 (1), (2). Since the transaction occurred before the effective date of the Uniform Commercial Code, the rights of the parties are governed by the sales act, the pertinent provisions of which are, "There is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose. (2) Where the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that they shall be of merchantable quality."[1] In *Poulos* v. *Coca-Cola Bottling Co. of Boston,* 322 Mass. 386 (a case involving an exploding bottle of carbonated beverage), it was held that the warranty of merchantability applied to the bottle as well as to the contents and that the plaintiff (a storekeeper who purchased the beverage in case lots for resale and who was injured by the explosion) was entitled to go to the jury in an action against the bottler for breach of such warranty. There was no discussion in that opinion as to whether there was a sale of the bottle. In *Mead* v. *Coca Cola Bottling Co.* 329 Mass. 440, however (decided nearly five years later), which also was an action for breach of warranty of merchantability arising out of the explosion of a bottle of carbonated beverage it was said at pages 442–443, "A primary question for decision is whether the implied warranty of merchantability imposed on the seller by the statute covered the containing bottle as well as the beverage. To establish a warranty as to the bottle it was necessary to show that the bottle had been sold." The only authority cited for this proposition was the *Poulos* case.

---

[1] See now St. 1957, c. 765, § 1; §§ 2–314 to 2–315 of the Uniform Commercial Code.

The court, after discussing the circumstances of the sale, concluded that there was a sale of the bottle to which the warranty could attach.

The defendant in the case at bar argues that the plaintiff does not bring himself within the *Mead* case, for there was no evidence of a sale of the jug which caused his injury. The evidence reveals little or nothing on that issue. All that we learn from the record is that "as far as . . . [the plaintiff] knew there was no special charge . . . for the . . . container." There was no evidence that it was customary to return the jug to the defendant or whether upon such return any refund was given to the customer. See *Commonwealth* v. *Brandon Farms Milk Co.* 249 Mass. 531. It seems likely that the transaction was either an outright sale of the milk and the jug, or a sale of the milk in a jug which was lent until its contents should be consumed. In view of common knowledge about the practices in the distribution of milk in the circumstances here presented, we assume that the jug was lent rather than sold and that the plaintiff was under a duty to return it.

In our view it is immaterial whether or not the property in the jug passed to the plaintiff. We reach this conclusion notwithstanding what was said in the *Mead* case. Upon reconsideration, we are now of opinion that a sale of the container, as such, is not necessary in order for the implied warranties of fitness and merchantability to attach in this transaction. This question was considered by the Court of Appeal in *Geddling* v. *Marsh,* [1920] 1 K. B. 668, in construing almost identical provisions of the English sale of goods act.[1]  Concerning the construction of the war-

[1] The pertinent provisions of that act are found in § 14, which reads: "Subject to the provisions of this Act . . . there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract of sale, except as follows:— (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, so as to show that the buyer relies on the seller's skill or judgment, and the goods are of a description which it is in the course of the seller's business to supply (whether he be the manufacturer or not), there is an implied condition that the goods shall be reasonably fit for such purpose . . . (2)  Where goods are bought by description from a seller who deals in goods of that description (whether he be the manufacturer or not), there is an implied condition that the goods shall be of merchantable quality . . . ."

ranty provisions by the English courts, we have said, "Decisions of this character, in view of the fact that the English sale of goods act was enacted before our own, and of the close similarity of the pertinent section of each act, are entitled to consideration." *Ward* v. *Great Atl. & Pac. Tea Co.* 231 Mass. 90, 95. In *Geddling* v. *Marsh* the plaintiff sold at retail bottled beverages received from the defendant manufacturer. The plaintiff was charged by the defendant three shillings per dozen for the beverage, and one penny for each bottle. The penny was refunded on the return of the bottle, and was forfeited if the bottle was broken or for any other reason was not returned. One of the bottles exploded and injured the plaintiff as she was handling it in her shop. In an action based on breach of an implied warranty of fitness, the trial judge found for the plaintiff. He found that the article sold was not fit for use because of improper ingredients, faulty mixture, or a defect in the bottle. He ruled that it was immaterial that the bottle itself, apart from its contents, was not sold by the defendant to the plaintiff. On appeal this ruling was challenged. Construing the findings below as indicating that the accident arose from a defective bottle rather than from the contents, and that there was no sale of the bottle, the Court of Appeal upheld the ruling of the trial judge. It was said by Bray, J., "In this case there was only one contract—namely, a contract between the plaintiff and the defendant that the plaintiff should be supplied with mineral waters. Mineral waters could not be supplied except in bottles, and therefore the plaintiff was asking to be supplied with mineral waters in bottles. That undoubtedly is a contract of sale, and I will assume that in that contract there might be a condition that the bottles should not be bought by the plaintiff but should be hired; but the question the county court judge had to consider was whether the bottles were not 'supplied under a contract of sale.' This was a contract of sale none the less because there was a special provision with regard to the bottles. The section [14], in my opinion, extends not only to the goods actually

bought under the contract but to goods 'supplied under the contract of sale.' This particular bottle was thus 'supplied under a contract of sale,' and it follows that it should be reasonably fit for the purpose for which it was supplied. In fact it was not reasonably fit and in consequence of that unfitness the plaintiff was injured" (pages 671–672). See *Cooper* v. *Newman*, 11 N. Y. S. 2d 319. This reasoning impresses us as sound. Thus, assuming, as we have, that there was no sale of the jug, that fact would not preclude recovery for breach of the implied warranties of fitness and merchantability, if the other elements for recovery are present, as we think they are. In view of the evidence that the jug was not mishandled after delivery, it could have been found that it broke because of a preëxisting defect. See *Evangelio* v. *Metropolitan Bottling Co. Inc.* 339 Mass. 177, 183–184. It follows that the plaintiff was entitled to go to the jury on the first and second counts.

2. The direction of the verdict for the defendant on the third count (in tort for negligence) was right. This aspect of the case is controlled by *Burnham* v. *Lincoln*, 225 Mass. 408. That was an action of tort for injuries sustained by the plaintiff by reason of the explosion of a carboy containing uncarbonated spring water. The spring water had been sold to the plaintiff's employer by the defendants a few days before the accident, and delivered in a five gallon carboy which "was lent by the defendants until the contents should be used." The defendants did not manufacture the carboys used by them nor did they sell them. One of the defendants testified that so far as he knew the carboy was not defective when delivered to the plaintiff's employer and that he "never had anything like this happen before." It was discovered after the accident that one side of the carboy was thicker than the other. The plaintiff's expert testified that the two sides are never of the same thickness, due to the process of glass blowing. It was not a defect that was apparent to a non-expert. The theory of the expert was that the explosion was due to the contraction of the glass, caused by contact with water of somewhat higher

temperature. In upholding the action of the trial judge in directing a verdict for the defendants, this court said, "On these facts it cannot be said that the defendants by the exercise of reasonable care would have foreseen that such an unprecedented occurrence was likely to happen. The plaintiff has not shown that her injury was due to the defendants' failure to exercise reasonable care and prudence in the discharge of any duty they owed her" (page 410). The evidence in the *Burnham* case is somewhat different from that in the case at bar but these differences are not sufficient to require a contrary result. Here, the evidence shows no more than that a glass jug of variable thickness containing milk, an uncarbonated beverage, shattered while the plaintiff was handling it. This, as in the *Burnham* case, was not enough to warrant an inference of negligence.

The plaintiff relies heavily on the recent case of *Evangelio* v. *Metropolitan Bottling Co. Inc.* 339 Mass. 177, where it was held that a plaintiff who was injured by the explosion of a bottle in circumstances quite similar to those here was entitled to a finding in an action of tort against the bottler. But the bottle in that case contained a carbonated beverage and it was the opinion of the court, after an exhaustive review of the cases in other jurisdictions, that the evidence was sufficient to raise an inference of negligence. In the case of the explosion of a bottle of carbonated beverage an inference could be drawn that the contents were excessively carbonated. See Pound, The Problem of the Exploding Bottle, 40 B. U. L. Rev. 167 (1960). But in a case like the present no such inference can properly be drawn. The distinction between carbonated and uncarbonated beverages with respect to the application of the doctrine of res ipsa loquitur has been recognized elsewhere. Thus the Supreme Court of California (on facts quite similar to those here and citing the *Burnham* case with approval) held that the "mere breaking of the bottle [containing milk] alone cannot give rise to an inference that defendant was negligent in failing to discover the defect." Continuing the court said—and this reasoning is applicable

here—"While the dairy may have had a duty to make an examination of all bottles, whether newly purchased or returned by prior customers, it is not responsible for defects that cannot be found by a reasonable, practicable inspection." *Honea* v. *City Dairy, Inc.* 22 Cal. 2d 614, 618. See *Trust* v. *Arden Farms Co.* 50 Cal. 2d 217. To the same effect is *Coralnick* v. *Abbotts Dairies, Inc.* 337 Pa. 344. Compare *Loch* v. *Confair*, 372 Pa. 212. The defendant in the case at bar did not manufacture the jug; it purchased the bottles for use in its business. See *Smith* v. *Peerless Glass Co. Inc.* 259 N. Y. 292. There is no evidence that a feasible means of discovering the defect in the jug was available to the defendant, and we cannot supply this lack of evidence by conjecture.

*Exceptions sustained.*