268 A.2d 699.

ANTHONY A. PETTELLA *vs.* CORP BROTHERS, INCORPORATED *vs.* UNION CARBIDE CORPORATION.

AUGUST 19, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

600

ROBERTS, C. J. This action in assumpsit was brought to recover damages for destruction by fire of the plaintiff's residence alleged to have resulted from a breach of warranty. The action was brought in November 1961 prior to the adoption of Super. R. Civ. P. In November 1967, after the adoption of Super. R. Civ. P., the defendant Corp Brothers, Incorporated, acting pursuant to Super. R. Civ. P. 14, was granted authority to implead Union Carbide Corporation, and a third-party complaint was served on Union Carbide. Thereafter, Union Carbide, as the third-party defendant, moved to vacate the third-party complaint and for summary judgment, both of which were subsequently denied. The cases were tried without a jury to a justice of the Superior Court, and decision was for the plaintiff against Corp Brothers, Incorporated, hereinafter referred to as the primary defendant, as defendant and for the third-party plaintiff against Union Carbide as third-party defendant. Subsequently judgment entered on these decisions. Both the primary defendant and the third-party defendant are now in this court prosecuting appeals from those judgments.

The record discloses that plaintiff had been employed as a jewelry model maker for several years and that in the course of such employment he had a workshop on the third floor of his home where he pursued this work part time. In doing this work at home, he used an acetylene torch to solder the components of the jewelry models together. The torch outfit used by plaintiff consisted of a small acetylene tank, a hose connected to the tank, and a torch attachment.

It appears from the evidence that plaintiff acquired the tank from the primary defendant, Corp Brothers, Incorporated, on December 31, 1959. It was his practice to bring back to his supplier an empty tank and receive a full one,

paying only for the acetylene gas that comprised the contents of the new tank. On this particular day plaintiff placed the tank on the rear seat of his car, where it remained until the following morning when he took it to his third-floor workshop. He testified that he attached the hose to one side of a Y valve on the tank, fitted a wrench to the side of the valve, and tapped it with a mallet to open the valve. He then struck a match to ignite the flame and saw that the flame was emerging from the part of the tank where the Y valve fits into it, a place where there was no method for shutting off the flame. Upon seeing the flame, he went downstairs and instructed his wife to call the fire department and, when returning to the third floor, found the workshop in flames. Both plaintiff's home and some of his personal property were substantially damaged in the fire.

### Appeal of the Primary Defendant

The primary defendant contends, first, that the trial justice erred in concluding that it had warranted the fitness of the container or tank in which the acetylene gas had been delivered to plaintiff at the time of its purchase. There is, it is true, a divergence in the views taken by the courts that have passed on this issue. We think, however, that the better view has been expressed in several well-reasoned opinions emanating from the courts of California and Massachusetts, where the provisions of the Uniform Sales Act covering implied warranties are similar with those contained in G. L. 1956, chaps. 3-8 of title 6, the Sale of Goods Act, so called.[1]

The provisions of that statute relating to implied warranties are substantially the same as those in the Uniform Sales Act, the statute that was in effect in those jurisdic-

---

[1] At the time of the instant action, the Uniform Commercial Code had not yet been adopted in Rhode Island and the Sale of Goods Act as cited was in effect.

tions which have adopted what we consider the sound view. The primary defendant, in essence, argues that the pertinent provisions of the sales act cover only those items that are actually bought and sold and, since the only sale here was of the acetylene gas and not the cylinder in which it was contained, the warranty provisions of the statute are not applicable to a defect in the container. The trial justice found that the pertinent provisions of our statute have the effect of imposing the implied warranty not only on the contents sold but on the container in which it was sold.

The controlling statutory language on this issue is to be found in §6-3-15 relating to implied warranties of quality and fitness. That section, in pertinent part, provides: "* * * there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. (2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

As we have already conceded, there is support in some jurisdictions for the proposition that this section applies only to that which is actually sold and not to the container in which the goods are sold. *Poplar* v. *Hochschild, Kohn & Co.*, 180 Md. 389, 24 A.2d 783, citing *Crandall* v. *Stop and Shop, Inc.*, 288 Ill. App. 543, 6 N.E.2d 685. In *Poplar* the Maryland court said at 393-394, 24 A.2d at 785: "In that case [Crandall] the court held that the implied war-

ranty of the fitness and quality of the contents of the jar did not extend to the jar or to the cap sealing it and held: 'While the conclusion to be reached from the decisions cited in counsels' brief is that there may be an implied warranty as to the wholesomeness of food products, it does not logically follow that this theory of recovery should be extended to containers in which the food is packed and under the circumstances of this case we hold that there was no such warranty as to furnish the basis for the judgment entered in favor of plaintiff.' "

In our opinion, however, the California and Massachusetts courts have adopted what we have already noted is, in our opinion, the sound viewpoint on this issue. The California court has spoken with clarity in support of this proposition. In *Vallis* v. *Canada Dry Ginger Ale, Inc.*, 190 Cal.App.2d 35, 11 Cal. Rptr. 823,[2] the court adopted much language from the concurring and dissenting opinions in its former decision in *Trust* v. *Arden Farms Co.*, 50 Cal.2d 217, 324 P.2d 583. The California statute which was in effect when these cases were decided was sec. 1735 of the Civil Code (Uniform Sales Act, §15) and in pertinent part is identical to the Rhode Island Sales Act.

The court in *Vallis,* at 40, quoting from *Trust* v. *Arden Farms Co.,* succinctly stated what we think is the correct and prevailing view as follows:

> " 'Section 1735 does not refer merely to goods sold but to all "goods supplied under a contract to sell or a sale." It has been held that when bottled beverages are sold, the bottles in which they necessarily must be delivered are *supplied under the contract of sale* within the meaning of the statute although the bottles are bailed rather than sold. (*Geddling* v. *Marsh* (1920), 1 K.B. 668; see 1 Williston on Sales (rev. ed. 1948), (582, n. 1.) The Geddling case related to a sale of

---

[2]In *Vallis* v. *Canada Dry Ginger Ale, Inc.* at 40-41 n. 3 sets out an excellent discussion of this issue.

"lime juice and soda" in bailed bottles and was decided under section 14 of the English Sale of Goods Act, 1893, which contains provisions nearly identical with those quoted above from section 1735. The findings in that case showed that the sale came within the first subdivision of the section, but the reasoning of the court is equally applicable to a sale coming within the second subdivision. Accordingly, even if we assume that the bottle involved here was bailed, it would be subject to any warranty which would be applicable under either of the quoted subdivisions if the bottle had been sold.

" 'The sale of a bottle of milk by a dairy under the circumstances appearing here clearly comes within the language of the second subdivision of the statute, and the seller's implied warranty of merchantable quality under this provision includes a warranty that his product is reasonably fit for the general purpose for which goods of that kind are sold.' "

In *Hadley* v. *Hillcrest Dairy, Inc.*, 341 Mass. 624, 171 N.E.2d 293, the Massachusetts court adopted the proposition that under the pertinent legislation the container in which the goods are delivered is also warranted. In *Hadley* the court clearly disposes of the contention that the implied warranty contemplated by the statute applies only to containers that have been sold. The court said at 627, 171 N.E.2d at 295: "In our view it is immaterial whether or not the property in the jug passed to the plaintiff. We reach this conclusion notwithstanding what was said in the *Mead* case. Upon reconsideration, we are now of opinion that a sale of the container, as such, is not necessary in order for the implied warranties of fitness and merchantability to attach in this transaction." In *Hadley* as in *Vallis* the court relied substantially on the rule laid down in *Geddling* v. *Marsh, supra,* by quoting from that case as follows at 628-629, 171 N.E.2d at 296: " 'The section [14], in my opinion, extends not only to the goods actually bought under the contract but to goods "supplied under

the contract of sale." This particular bottle was thus "supplied under a contract of sale," and it follows that it should be reasonably fit for the purpose for which it was supplied.' " We hold, then, that where goods are delivered under a contract to sell, the implied warranties provided for in §6-3-15 apply to the container in which such goods are delivered as well as to the goods themselves.

We are aware that on a receipt put into evidence by plaintiff as having been given him when he bought the gas from primary defendant there was a statement setting out an agreement as to the loan of the cylinder. However, assuming that the cylinder was loaned by primary defendant to plaintiff, it clearly comes within the purview of the California and Massachusetts cases and is within our holding stated above. We see no error in the conclusion of the trial justice that the statutory warranty applied to the tank in which the gas was delivered.

It is contended also by primary defendant that the trial justice was clearly wrong in finding that plaintiff had given the proper notice of the alleged breach of warranty as required by §6-5-9. In so arguing, it contends that the notice was defective both as to timeliness and as to substance. The statute provides, in pertinent part, as follows: "But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

The facts relating to the giving of notice as required by the statute are not in dispute. The record discloses that plaintiff notified the primary defendant by mail on February 26, 1960, of the fire that had occurred on January 1, 1960, allegedly caused by the defect in the tank sold by the primary defendant to plaintiff on December 31, 1959. In the letter plaintiff informed the primary defendant that

he was claiming damages against it for the destruction to his home and property caused by a fire on January 1, 1960, "* * * which fire was caused by a defective tank which you sold to Mr. Pettella." The letter then went on to ask the primary defendant to refer the communication to its insurance carrier or otherwise to contact the writer's office within one week from the date thereof, and it was signed by plaintiff's attorney, John C. McOsker.

The record discloses that the primary defendant raised a question whether the notice given it of plaintiff's claim constituted compliance with the relevant statute. A trial court, when passing on a motion to dismiss, is required to exercise sound judicial discretion in view of the circumstances presented by the motion. *Manekofsky* v. *Baker,* 92 R. I. 377, 169 A.2d 376. In *Colitz* v. *Gilbert,* 53 R. I. 319, 321, 166 A. 685, 686, this court said that, to constitute an exercise of sound judicial discretion, the judicial discretion "* * * must be exercised in the light of reason applied to all the facts and with a view to the rights of all the parties to the action." As we said in *Manekofsky,* the trial justice exercising his judicial discretion on a motion to dismiss must do so with a scrupulous regard for the rights of the parties to the action. We are unable to perceive that the action of the trial justice denying the motion to dismiss in these circumstances constituted an abuse of discretion.

We are of the opinion that the primary defendant, as the moving party, had the burden to establish that it had been prejudiced by a delay of 56 days in the giving of the statutory notice. There is substantial authority for the proposition that one of the factors to be considered on the question of compliance with a statute requiring that reasonable notice be given is whether the delay in giving the notice or its substance prejudiced the seller. *Pritchard* v. *Liggett & Myers Tobacco Co.,* 295 F.2d 292 (3d Cir. 1961). In that case the Circuit Court noted that the Pennsylvania

cases which reflected the weight of authority make an application of the doctrine of laches in a determination of this question. The court, quoting from several of the Pennsylvania decisions, noted that where the defendant's position or rights are so prejudiced by the length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of the claim against him, it is within the discretion of the court to grant the motion to dismiss.

Adopting and applying the rules stated in *Pritchard,* we are unable to perceive that the primary defendant had established that it was prejudiced by the delay of 56 days in the giving of notice of the fire. In an effort to comply with this burden, it has argued vigorously that this delay prevented it from having a timely opportunity to examine the tank and determine in what manner it was defective, if at all. We are persuaded, however, that its opportunity to defend was not at all impaired by such delay. The primary defendant's case as it is developed in the record was ably and adequately presented, and we are unable to say that it would be an injustice to the primary defendant in all the circumstances to permit an assertion of the claim against it on the basis of such notice.

We note also the contention of the primary defendant that the notice was in substance insufficient to inform the primary defendant of the precise goods sold and the contract under which the sale was made. We are unable to perceive that there is merit in this contention, being persuaded that the notice was adequate in substance to permit the primary defendant to prepare a defense to the claim. We hold that the denial of the primary defendant's motion to dismiss did not constitute an abuse of the judicial discretion of the trial justice.

The primary defendant contends further that the trial justice was clearly wrong in finding on the evidence that

the acetylene gas tank was defective at the time the gas was sold to plaintiff. In this state we follow the well-established rule that when the parties submit a controversy to a justice of the Superior Court sitting without a jury, both on the law and on the facts, the finding of such justice will not be disturbed unless it is clearly wrong. *Romeo* v. *Cranston Redevelopment Agency,* 105 R. I. 666-67, 254 A.2d 426, 435.

The question, then, presented by this argument is whether the trial justice was clearly wrong in concluding that plaintiff had established that at the time of the sale to him of the gas the tank was defective. Essentially, the primary defendant rests this argument on his disagreement with the reasonableness of the inferences drawn by the trial justice from the evidence adduced on the issue. It is arguing, in effect, that the evidence submitted by plaintiff is not susceptible of the inferences drawn therefrom by the trial justice, or at least that there are more reasonable inferences that could be drawn from that evidence.

We have on prior occasions considered the extent to which the existence of reasonable inferences to be drawn from evidence that are contrary to those that have been drawn therefrom by a trial justice serves to invalidate a finding resting on the inferences so drawn by the trial justice. We have concluded that the mere existence of contrary inferences to those drawn by a trial justice from particular evidence, even though they be reasonable inferences, ordinarily is not sufficient to invalidate those drawn by a trial justice. We think that in appropriate circumstances the probative force of the selected inference may be negatived. In *Labbe* v. *Hill Brothers, Inc.,* 97 R. I. 269, 275, 197 A.2d 305, 309, we said: "It is our opinion that the probative force of the selected inference may be negatived by a showing of the susceptibility of the evidentiary fact to one or more inferences that have probability

in such degree as to negate the probability of probative force in the inference selected. But the mere existence of contrary inferences in which probability inheres is not controlling on the acceptance by the trial justice of one of such inferences as probative of the fact in issue. See *Valente* v. *Bourne Mills*, 77 R. I. 274; *Colgan* v. *United Electric Rys.*, 65 R. I. 60."

In the instant case the trial justice inferred from the evidence that the defect in the tank which subsequently caused it to develop a leak of the contents existed prior to its delivery to plaintiff. There is no question but that the evidence so adduced is reasonably susceptible of this inference. He inferred from the same evidence that the defect existed at the time of the delivery of the tank to the third-party plaintiff.

What the primary defendant is urging is that the evidence is susceptible of reasonable contrary inferences to the effect that the tank was in sound condition when delivered to plaintiff and that it was as a result of plaintiff's handling of the tank in preparing it for use that the leak developed which caused the fire. It is to be conceded that such contrary inferences are not entirely lacking in reasonableness. It does not follow, however, that they possess probability in such a degree as to negative the probability of the inference drawn by the trial justice. In such circumstances we cannot agree that the trial justice erred in rejecting the inferences suggested by the primary defendant in resting his decision on those which he drew from the evidence.

We turn lastly to the primary defendant's contention that the trial justice was clearly wrong in assessing plaintiff's damages at $12,572.95. This amount represents the award of damages to plaintiff for injury to his residence and for damage to his personal property that was in the residence. Apparently the primary defendant does not

question the award of $8,702.95 for damage to the dwelling house but appears to question only the amount of damages awarded for the loss of personal property in the house.

Basically, the primary defendant is arguing that there was no evidence in the record upon which the trial justice could base his conclusions as to the amount of damage. However, the court's written decision on the issue of damages indicates clearly that he rested those conclusions as to the amount of damages to be awarded for plaintiff's personal property largely on plaintiff's own testimony. In such cases the trier of fact has the obligation to evaluate that testimony and to judge the credibility of the plaintiff as a witness. *DeSpirito* v. *Bristol County Water Co.*, 102 R. I. 50, 55, 227 A.2d 782, 785.

In *DeSpirito*, we recognized that generally the plaintiff, in proving his damage for injury or loss of items of personal property, is usually restricted to testimony which evidences the difference between the before and after fair market values. However, we went on to recognize that this rule may not have application in proving damages for the loss of or injury to wearing apparel, household goods, and effects kept for personal use. We noted that such property cannot in any real sense have a fair market value unless it be in a second-hand market. We went on to say: "Accordingly in such cases, instead of adhering to the before and after market values as the rule of damages, the courts, giving due consideration to the attendant circumstances and conditions, permit recovery of the actual value to the owner of the thing lost or damaged, excluding, of course, any fanciful or sentimental value that might be placed upon it." *Id.* at 54, 227 A.2d at 784.

After an exhaustive examination of the decision of the trial justice and the transcript, it is our conclusion that the trial justice clearly applied the rule stated in *DeSpirito* in determining the amounts that should be awarded

for damages with respect to the personal property of the plaintiff. We are unable to perceive that he misconceived or overlooked any of this testimony or otherwise abused the discretion resting in him in drawing such reasonable inferences from this evidence as he did.

In *DeSpirito* we said that in determining the recoverable actual value of such property, the trial justice has a wide latitude and, depending on the particular conditions and circumstances, may consider evidence as to the cost of an article when new, the length of time it has been in use, its condition at the time of the loss or injury, the expense to the owner of replacing it with another article of like kind and similar condition, and any other facts which will assist in determining the worth of that article to the owner at the time of the injury. It is our conclusion that the trial justice, in passing upon the issue of the value of the personal property, acted well within the standards set forth above, and it is our conclusion that he was not clearly wrong in awarding the damages that he did.

### Appeal of the Third-Party Defendant

The third-party defendant contended, first, that it is not liable to the primary defendant on the grounds that the trial justice was clearly wrong in finding that the primary defendant had breached a warranty made to plaintiff. We have already disposed of this contention in dealing with the appeal of the primary defendant and find it without merit.

The third-party defendant contends further that there was no evidence that the cylinder containing the gas had been sold by the third-party defendant to the primary defendant. This contention, in our opinion, is also without merit. We have in this opinion already decided that a sale of the container is not necessary for a warranty to exist. As we have already held, it is sufficient to give the

warranty if the cylinder is "supplied as part of the contract of sale." The trial justice reasonably inferred, in our opinion, since the third-party defendant conceded that the gas had been put into the container at its South Sudbury plant, that it was sold by the third-party defendant to the primary defendant. It is clear, then, in our opinion, that the cylinder was supplied as part of the contract of the sale of the gas from the third-party defendant to the primary defendant just as it was sold as part of the contract of sale when the primary defendant sold the gas to plaintiff.

It is also contended by the third-party defendant that it was error on the part of the trial justice to overrule its motion to vacate the February 21, 1967 order granting the primary defendant's motion to implead Union Carbide as a third-party defendant. The primary defendant's motion to implead the third-party defendant was made under Super. R. Civ. P. 14, which provides, in pertinent part, as follows: "(a) When Defendant May Bring in Third Party. At any time after commencement of the action a defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

Such a motion is addressed to the discretion of the trial justice. 1 Kent, *R. I. Civ. Prac.*, §14.3 at 141 Discretion of Court, states in pertinent part as follows: "Although the defendant may cause a third-party complaint to be served without leave of court if he acts not later than ten days after service of his answer, the court has broad discretion as to the appropriateness of impleader in each case." The trial justice's decision on such a motion will not be overturned unless it is shown that the trial justice has abused his discretion. *Colitz* v. *Gilbert*, 53 R. I. 319, 320-321, 166 A. 685, 686. The third-party defendant's

motion to vacate said order was based on the ground that the defendant was guilty of laches. The third-party defendant has neither briefed nor argued the propriety of the dismissal of said motion made on this ground and, therefore, such issue must be deemed to have been waived. *Sunny Day Restaurant, Inc.* v. *Beacon Restaurant, Inc.*, 103 R. I. 707, 709, 241 A.2d 295, 296.

The third-party defendant argues finally as an additional ground of appeal the doctrine of collateral estoppel. It contends that its liability to the primary defendant has been extinguished by the judgment which was entered in the United States District Court in its favor after a full trial on the merits in the original proceedings brought against it by Pettella and that, therefore, the trial justice was clearly wrong in denying its motion for summary judgment to the third-party complaint based on this ground. We perceive no merit in this contention.

The third-party defendant argues, in part at least, that its motion was for a summary judgment to dismiss the third-party complaint, and it is to be noted that this is the way the motion was made to the trial justice. However, in other parts of the brief the third party labels its motion as one to "Dismiss the Plaintiff's Complaint." The record indicates quite clearly, however, that the third-party defendant intended and made a motion for summary judgment as to the third-party complaint, and the record also discloses that said motion was denied by the trial justice.

In effect, the third-party defendant attempted to invoke the doctrine of collateral estoppel as enunciated in *Harding* v. *Carr*, 79 R. I. 32, 83 A.2d 79, and in *Hill* v. *Bain*, 15 R. I. 75. We do not question the appropriateness of such a pleading if it had been advanced in the *primary proceedings* by the primary defendant or even by the third-party defendant under Super. R. Civ. P. 14 (a) which

permits in such a proceeding the assertion of any "* * * defenses which the third-party plaintiff has to the plaintiff's claim." If used in that proceeding the assertion would have been by one not a party to the prior suit against one who was such a party. But that is not the situation here for in these proceedings the plea was asserted, not in the primary suit, but in a suit for contribution, and the assertion was made by a party to the prior litigation against one who was not a party to that suit. In those circumstances, to permit the use of collateral estoppel as a shield would preclude the primary defendant from a full and fair opportunity to assert its claim procedurally and evidentially, and would deny that defendant its day in court. That we will not permit. See *Pat Perusse Realty Co.* v. *Lingo,* 249 Md. 33, 238 A.2d 100.

The appeal of the primary defendant and the appeal of the third-party defendant are denied and dismissed, and the judgments appealed from are affirmed.

Motion of Union Carbide Corporation for leave to reargue denied.

*Gerald P. McOsker,* for plaintiff.

*Guy J. Wells,* for third party defendant, *John T. Keenan,* for defendant and third party plaintiff.