DECISION
The matter before the Court is a petition for assessment of damages resulting from defendant Town of Burrillville's condemnation of a portion of plaintiffs' land, which involved an actual taking in fee simple of 3,100 square feet, a permanent sewer easement of 5,410 square feet, and a temporary easement of 6,800 square feet. Jurisdiction in this Court is pursuant to G.L. 1956 § 37-6-18.
Facts/Travel
The plaintiffs, George and Paula Hickey (plaintiffs), own a parcel of real estate located at 1098 Victory Highway in Burrillville described as Lot 46 on Plat 32. The property, approximately 1.48 acres in size, is bordered to the west by the Clear River and to the south by Victory Highway. When the plaintiffs purchased this lot on September 1, 1988, there existed a one-story structure which had been used as a local tavern. Following the purchase, the plaintiffs reopened as Tuffy's Tavern, Inc., and significant improvements were made to the building and grounds.[1]
On March 21, 1991, the town of Burrillville (defendant), by and through its Sewer Commission, condemned a part of plaintiffs' property to construct a sewerage pumping station in conjunction with a town-wide sewer installation project. The sewerage pumping station was constructed upon a 3,100 square foot acquisition abutting the subject property on the east boundary, approximately 50 feet east of the building and 60 feet north of Victory Highway. An underground access sewer line was installed across a permanent 5,410 square foot sewer easement running in a northerly direction to the pumping station from Victory Highway and in a westerly direction from the pumping station to the Clear River. A three year 6,800 square foot temporary easement was also taken by defendant for use during construction of the sewerage pumping station. The remaining parcel following condemnation was approximately 1.28 acres in size.
The defendant offered the plaintiffs $18,000 as fair compensation for the taking of the property. The plaintiffs rejected this offer, arguing that it did not reflect the fair-market value of the taking. On November 4, 1991, the plaintiffs filed a petition with this Court for an assessment of damages regarding the partial taking of their real estate. The $18,000 originally offered was deposited with the Registry of Court and subsequently paid to the plaintiffs.
On January 23 and 24, 1996, a trial was held before this Court, sitting without a jury, regarding the assessment of damages.
Discussion
In this State, a landowner whose property is taken for public use is entitled to just compensation for the taken property. Rhode Island Constitution, Article I, § 16. It is well settled that the measure of damages to be awarded as compensation for the property taken by condemnation is the fair-market value of the property, based on its most advantageous and valuable use. "The preferred method of ascertaining the fair market value of land taken by condemnation is the comparable sales method." Significant factors which affect comparability are the location and character of the property, the proximity in time of comparable sales, and the use to which the property is put.Warwick Musical Theatre Inc. v. State of Rhode Island,525 A.2d 905 (R.I. 1987).
In Rhode Island partial taking cases, the State must compensate a landowner not only for the value of the land taken but also for any severance damage to the remainder. Hetland v.Capaldi, 107 R.I. 614 [103 R.I. 614], 240 A.2d 155, 157 (1968). Such damages are ascertained by establishing the difference between the value of the land prior to taking less its value after taking.Id. at 157.
This Court, sitting without a jury, heard testimony and received evidence on the issue of just compensation for the taken property. The plaintiffs claim they are entitled to $74,392 in total damages, including $45,000 in severance damages, $24,000 in actual damages, and $5,392 in tree damages. The defendant contends the plaintiffs are entitled to $17,500 in total damages.
The key witness on behalf of the plaintiffs was Mr. Joseph Capaldi, an expert real estate appraiser, who testified after conducting an appraisal of the subject property using Direct Sales Comparison Approach to produce a before and after value of the property, and also to appraise the value of the land taken.
Mr. Capaldi compared the subject property to four comparable properties that had recently been sold. They indicated values between $64.80 per square foot and $76.34 per square foot. Making adjustments to these properties based on his knowledge and judgment as to market reactions to various differences between the properties, Mr. Capaldi determined the subject property to be valued at $75.00 per square foot. He then multiplied $75.00 per square foot times the building area of the subject property, 2,592 square feet, in finding the value of the subject property to be worth $194,400 before condemnation (rounded $195,000).
Mr. Capaldi testified that he believed the subject property had changed its character following condemnation, significantly decreasing its value, indicating that the size of the property was reduced from 1.48 acres to approximately 1.28 acres. Additionally, pursuant to the language of the taking, the defendant's use of the permanent easement was unrestricted and no right of access was reserved for the plaintiffs. Mr. Capaldi estimated this caused the plaintiffs to lose 90 percent of their total rights within the permanent easement area, further reducing the value of the subject property. He further maintained that the takings resulted in the loss of twenty-one parking spaces and the alteration of the existing parking scheme. Moreover, he contended that the construction of the sewerage pumping station and the removal of five trees transformed the property from a rural setting to a semi-rural/urban one.
In order to determine an after value of this changed property, Mr. Capaldi testified that he compared the subject property to other properties which shared its locational amenities, market demographics, and physical characteristics. After adjustments, based on these comparisons he concluded that $57.75 per square foot was appropriate for the after value of the subject property. Consequently, multiplying $57.75 per square foot by 2,592 square feet, he determined the after value of the property to be $149,688 (rounded $150,000). Mr. Capaldi subtracted this after value from the before value of $195,000 in concluding that the defendant owed the plaintiffs $45,000 in severance damages.
Mr. Capaldi addressed the actual damages due to the plaintiffs for the value of the land taken by surveying and analyzing five comparable sales of vacant commercial land possessing similar characteristics as the part taken here. The five properties had sale values ranging from $1.04 to $7.23 per square foot. Based upon this information and the analysis thereof, he found a unit value of $2.50 per square foot for the subject land area. He multiplied this figure by 3,100 square feet in reaching $7,750 worth of actual damages for the fee simple taking. He multiplied 90 percent of $2.50 per square foot by 5,410 square feet in arriving at $12,172 value for the permanenteasement rights acquired by defendant. The temporary easement valuation, which was based upon an analysis of comparable commercial land lease information, was calculated by applying a unit rent of $.25 per square foot times 6,800 square feet in arriving at a figure of $1,700, discounted by the present worth factor of $1.00 per period — $1,700 x 2.401831 for a total of $4,083 for the temporary easement. Adding these amounts together, Mr. Capaldi believed the plaintiffs suffered a total of $24,000 worth of actual damages.
William Coyle, Jr., a recognized real estate expert who testified for the defendant, did not agree with Mr. Capaldi's assertions. He testified that Mr. Capaldi's appraisal method was flawed and had not been done in accordance with the proper appraisal methods, because he felt that Mr. Capaldi in his before and after comparison method had included all the elements of damage. Therefore, when Mr. Capaldi did a separate appraisal of the strip taken for actual damages and then added those actual damages to the severance damages, Mr. Coyle claimed that was a "double dip."
Further testimony was heard criticizing Mr. Capaldi's assertions. Frank Romeo, an expert traffic engineer, contended that Mr. Capaldi's map in his appraisal demonstrated a loss of only eight parking spaces. He testified that Mr. Capaldi's traffic engineering overlay would be impossible to comply with because the traffic lane would have to go through woods, over grass, and up a slope that would prevent automobiles from being able to turn. William Skirpan, Jr., the defendant's engineer who supervised the construction project, similarly testified that the parking plan as shown in Mr. Capaldi's appraisal was not feasible.
The key witness for the defendant was Thomas Sweeney, an expert real estate appraiser. Like Mr. Capaldi, Mr. Sweeney used the Direct Sales Comparison Approach to appraise the subject property. Mr. Sweeney compared the subject property to the three comparable properties in arriving at a before value for the subject parcel. He made adjustments for location and physical characteristics of the properties. After completing his analysis, Mr. Sweeney determined that a narrow range of value indications was developed between $58.29 to $62.10 per square foot. Based on this, he concluded that the subject property had a value of $60.00 per square foot. Applying this to the subject property's 2,578 square feet of building area, he arrived at a before value of $154,680 (rounded $155,000).
Mr. Sweeney concluded that the economic value of the subject parcel lay in the land and building fronting the street. He found that the only impact the takings had on the overall use of the subject property was the loss of approximately eight parking spaces. Further, he believed that the loss resulting from the permanent easement taking was almost negligible, noting that the permanent easements were located in a wooded area behind the tavern and that restraints were placed on this land due to its inclusion in a flood plain. With these factors in mind, Mr. Sweeney applied a negative 10 percent impact to the property because of the taking, resulting in his estimation of $139,500 after value of the subject property.
In order to determine the land value of the subject parcel, Mr. Sweeney located three parcels that he considered comparable to the subject site. After adjustments, the comparable sales fell into a range of values, from $1.29 to $2.33 per square foot, selecting a value at the lower end of the range due to the larger size of the subject lot. Mr. Sweeney applied a value of $1.29 per square foot to the subject property and multiplied this times the area of acquisition, 3,100 square feet, to arrive at a damage figure of $4,000 for the fee simple taking. Since he believed the plaintiffs lost only 10 percent of their total rights due to the permanent easement, he multiplied 10 percent of 1.29 per square foot times 5,410 square feet in reaching a $700 damage figure for the permanent easement rights. He determined the actual damage
value of the parts taken to be $4,700.
Mr. Sweeney calculated severance damages pursuant to the International Right of Way Association procedure. He subtracted the actual damages of $4,700 from the before value of the subject property, $155,000, in arriving at a figure of $150,300 for the value of the remainder not taken. He then subtracted the after value of $139,500 in calculating severance damages at $10,800.
Mr. Sweeney used 8 percent of $1.29 per square foot to determine the rent for the portion of the subject parcel affected by the temporary easement taking. He multiplied this by 6,800 square feet, the area of the temporary easement, in finding $2,000 in rent due for year one, $649.76 for year two, and $601.62 for year three, making total rent of $1,953.14 (rounded to $2,000) (The discount factors for rents in years 2 and 3 are based on the present value of $1 received in either one year or two years.) Accordingly, adding the amount of rent due with the amount of actual and severance damages, Mr. Sweeney determined plaintiffs' damages to be $17,500.
This Court has reviewed the testimony and reports of the expert appraisers. It seems to this Court that the most comparable property to the subject property is plaintiffs' comparable number one. This Court will use plaintiff's comparable number one employing the defendant appraiser's adjustments to time, location, and physical characteristics to determine the before value of the subject property.
This Court believes that plaintiffs' comparable number one is the most similar to the subject property because of its location and utility. It is located in Richmond, which is a rural community like Burrillville, and is situated on a main road for its area, like the subject property. Likewise, the building on the property is primarily used as a tavern and is approximately the same size as the plaintiffs' tavern. Since comparable number one was sold January 21, 1988, more than three years before the March 21, 1991 condemnation, adjustments will be needed for time. Similarly, since the land area of comparable number one is 3.12 acres and the plaintiffs' land area is only 1.48 acres, adjustments will have to be made for land area size. This Court assigns a minus 15 percent adjustment for time and a minus 10 percent adjustment for land area.
The sale price per square foot for comparable number one is $84.82. Making an overall net adjustment of minus 25 percent results in a $63.62 price per square foot for the subject property. Multiplying this by the subject's building area of 2,592 square feet produces a before value for the subject property of $164,903 (rounded $165,000).
This Court believes the credible evidence of record does not support a finding that the property has significantly changed its character following condemnation. The Court accepts Mr. Sweeney's finding that the economic value of the subject property is in the land and building fronting the street and not in the property taken by the defendant. The Court finds that the evidence of record demonstrates that the areas of the subject property taken are not central to the use of the property as a bar. Additionally, based on the trial testimony and evidence of record, the land taken in fee simple and the permanent easement acquired by defendant are located in a flood plain. Since the land is located in a flood plain, the plaintiffs are precluded from building on it anyway so the condemnation really has no significant impact. Potential use may be considered as evidence of highest and best use provided the landowner establishes that the probability of that occurring is reasonably definite and not speculative or remote. Tennessee Gas Pipeline Company v. 104Acres of Land, 780 F. Supp. 82, 86 (D. R.I. 1991). There is no evidence before this Court that approval would be given to the plaintiffs to use this wetland area to build.
Furthermore, this Court finds that evidence before it demonstrates that the plaintiffs lost approximately eight parking spaces due to the taking. However, the Court believes that this loss had only a minimal effect on the overall value of the subject property. Moreover, the Court is not persuaded that the construction of the sewerage pumping station, which is surrounded by evergreens, has transformed this rural property to a semi-rural/urban one.
Noting these findings, this Court will apply a negative 10 percent impact to the subject property as a result of the taking. This results in a $148,500 after value of the subject property.
It seems to this Court that the closest comparable for the value of the land taken is the comparable used by both the plaintiffs and the defendant, plaintiffs' land sale number one and defendant's land sale number two. This latter comparable should be utilized to determine land value because this Court is of the opinion that this comparable has the most similar characteristics to the part taken here, the comparable being vacant commercial land located in Lincoln on the Old Louisquisset Pike.
The adjusted sales price for plaintiffs' land sale number one and defendant's land sale number two is $2.38 per square foot. Using this figure in the instant matter results in $7,378 (rounded $7,375) actual damages for the fee simple taking, $2.38 per square foot times 3,100 square feet. Since this Court determines that the plaintiffs lost only 10 percent of their total rights in the permanent easement area, the actual damages for the permanent easement rights are $1,287 (rounded $1,300), 10 percent of 2.38 per square foot times 5,410 square feet. Accordingly, this Court finds that the plaintiffs suffered $8,665 in actual damages because of the land taken.
The Court believes that the utilization of the International Right of Way procedure in determining severance damages is appropriate. Subtracting the value of the taking ($8,665) from the before value of the subject property ($165,000) results in a $156,335 value for the remainder not taken. Subtracting the after value of the parcel ($148,500) from the value of the remainder not taken ($155,325) produces severance damages of $7,835. Consequently, this results in total damages in the amount of 16,500 plus rent for the temporary easement due to the plaintiffs.
The Court accepts Mr. Capaldi's analysis of comparable commercial land lease information, and it applies a unit rent of $.25 per square foot for the temporary easement area. Multiplying $.25 per square foot by the 6,800 square foot temporary easement area for three years produces $4,083 in rent due to the plaintiffs. (Discounted by the present worth factor of $1.00 per period for years two and three.)
In addition to severance and actual damages, the plaintiffs argue that they are entitled to separate compensation for the value of trees cut down during condemnation. The plaintiffs admit that trees usually are not valued apart from the real estate, but they claim such compensation is appropriate in the instant circumstances. They cite G.L. 1956 § 34-20-1, which provides for a cause of action where trees are cut or otherwise destroyed without an owner's consent. The plaintiffs contend they should be allowed additional compensation because they are not being compensated for the total value of the area of their property which lies within the permanent easement area. See LouisianaPower and Light Company v. Ristroph, 200 So.2d 14, 24 (La. App. 1967).
With respect to the value of the trees, John Campanini, Jr., consulting arborist, testified for the plaintiffs. He was hired by the plaintiffs to appraise the trees on the property which they believed were earmarked for removal. One day prior to his testimony before this Court, Mr. Campanini viewed the subject property and determined five trees had been removed. He appraised the value of these five trees at $5,392.
The defendant argues that the plaintiffs are not entitled to separate compensation for any tree damage. The defendant's engineer, Mr. Skirpan, who supervised the entire project for the Town, testified that he was aware of only one tree being cut down during construction, and that tree was rotted inside. He claimed that he inspected the premises upon completion of construction and saw no evidence of any other trees having been cut down.
This Court is not impressed with the plaintiffs' argument that they are entitled to separate compensation for tree damage, claiming that right pursuant to § 34-20-1. That statute addresses situations where there has been trespassing and an unauthorized cutting of trees. The defendant here was not a trespasser and was authorized to cut trees because the taking instrument allowed it unrestricted use of the permanent easement area. The plaintiffs themselves even admit that in condemnation proceedings trees are not usually valued apart from the real estate. See StateDepartment of Highways v. Miltenberger, 344 So.2d 705, 710 (La. App. 1977); Department of Transportation v. Farnsworth,653 N.E.2d 423, 424 (Ill. App. 3 Dist. 1995).
Furthermore, even if this Court were to allow the plaintiffs to recover separate compensation for tree damages, there is no credible evidence before it that the defendant or its agents cut down the five trees. There is also no evidence on the record as to when or for what reason they were cut down, or if the trees were even located within the permanent easement area. The only evidence of any competence before this Court is that the defendant's agents cut down one rotted tree. Moreover, there was no reliable evidence presented as to the relative worth of these five trees because even though Mr. Campanini appraised the value of the five trees at $5,392, he admitted to the Court that he does not consider himself an expert tree appraiser.
For the reasons hereinabove set forth, this Court determines that the plaintiffs have proven they are entitled to $20,600 in compensation for the taken property. Accordingly, this Court awards the plaintiffs $20,600 minus the amount of $18,000 the defendant has already paid the plaintiffs.
Counsel shall prepare an appropriate order for entry.
[1] The plaintiffs purchased the subject property for $100,000 and made $45,000 worth of improvements over a two and one-half year period.