378 So.2d 86 (1979)
Ronald Wayne HURD, by and through His Next Friend and Mother, Ramona Thompson and Ramona Thompson, Individually, Appellant,
v.
MUNFORD, INCORPORATED, a Delaware Corporation, D/B/a Majik Market, and Janet Tonder, Appellees.
No. LL-279.
District Court of Appeal of Florida, First District.
December 28, 1979.
*87 D.L. Middlebrooks, Jr., and David A. Reed of Levin, Warfield, Middlebrooks, Mabie, Rosenbloum & Magie, Pensacola, for appellant.
A.G. Condon, Jr., of Emmanuel, Sheppard & Condon, Pensacola, for appellees.
PER CURIAM.
AFFIRMED.
BOOTH and LARRY G. SMITH, JJ., concur.
ERVIN, J., concurs and dissents.
ERVIN, Judge, dissenting and concurring.
Appellants appeal directed verdicts entered against them on two counts of their suit and challenge an instruction given to the jury relating to their third count. I would reverse as to the directed verdicts and affirm as to the third count.
Appellant Hurd purchased gasoline from one of appellee Munford's Majik Markets. Hurd used his own container, an empty plastic milk carton, and pumped the gasoline himself. He returned home, mowed the grass and later placed the milk carton into the family's utility room. He testified that he did not think he placed the top back onto the carton. Approximately four hours after buying the gasoline, Hurd went to the utility room to get some clothing. What followed was disputed. Hurd testified he did not knock over the milk carton, but a paramedic said Hurd told him that he did in fact do so. In any event, gasoline poured over Hurd's clothing, spread to a nearby hot water heater, and was ignited by its pilot light. Hurd suffered severe burns.
Hurd filed a three-count complaint alleging breach of an implied warranty, strict liability for a dangerously defective product, and negligence. The trial judge directed verdicts against Hurd on the first two counts, and the case went to the jury on the negligence count, on which the jury found for the appellees. I think the court erred in granting directed verdicts on both counts. As to both theories, the trial judge was of the opinion that since the sale involved only gasoline and did not include the container, which Hurd supplied, there were no issues of fact to be resolved by a jury. Section 526.141, Florida Statutes (1975), requires that self-service gasoline stations keep an attendant on duty during all operating hours. One of the attendant's statutory responsibilities is "to prevent the dispensing of flammable and combustible liquids used as motor fuels into portable containers unless such container bears a seal of approval of a nationally recognized testing agency... ." I think the statute must be read in pari materia with that portion of the Uniform Commercial Code governing implied warranties. Section 672.314 states in pertinent part:
(1) ... a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind... .
(2) Goods to be merchantable must be at least such as:
* * * * * *

*88 (e) Are adequately contained, packaged, and labeled as the agreement may require; and
* * * * * *
The "agreement" pertaining to packaging of flammable materials is, I think, defined in Section 526.141 and requires that when gasoline is not pumped directly into a motor vehicle, it may only be placed in a specifically approved container; otherwise, the product may not be sold. When these statutes are read together, and applied to a fact situation in which a retailer permits gasoline to be dispensed into a nonapproved container, the retailer, by operation of law, must be considered to have supplied both the gasoline and the container to the purchaser. The purchaser could not have obtained the gasoline unless it was placed in some type of container, and, as a result of the delivery of the goods to the plaintiff in a defective condition, a breach of an implied warranty occurred.
Even in the absence of Section 526.141, I think the provisions of Section 672.314 are susceptible to the interpretation that a breach of implied warranty transpires if goods, which are the object of the sale, cannot be delivered without a container, and the seller knowingly permits the goods to be delivered in a defective container. Under those conditions, I do not think it matters who supplies the container. The UCC comment to Section 2.314(2)(e) states that "[p]aragraph (e) applies only where the nature of the goods and of the transaction require a certain type of container, package or label." When a retailer sells both the product and the container, an implied warranty of merchantability is imposed on the retailer that covers not only the product, but the adequacy of the container and its packaging. See Schuessler v. Coca Cola Bottling Company of Miami, 279 So.2d 901, 903 (Fla. 4th DCA 1973); Canada Dry Bottling Co. of Florida v. Shaw, 118 So.2d 840 (Fla. 2d DCA 1960). Even though the quantity within a container is sold, and not the container, the container may nevertheless be subject to implied warranties of fitness and merchantability. In Hadley v. Hillcrest Dairy, Inc., 341 Mass. 624, 171 N.E.2d 293 (1961), plaintiff was injured after a glass jug of milk shattered. The milk within the container was delivered to plaintiff's home but the supplier retained ownership of the defective bottle. Despite the fact that the bottle had been loaned by the defendant to the plaintiff, the court held that the sales warranty attached to the goods supplied as well as the goods sold.
I have found no cases that directly address the question before us. The answer lies, I think, in our construction of Section 672.314. The UCC is to be liberally construed to promote its underlying purposes and policies. Section 671.102(1) and (2). A rule which places liability upon a retailer who causes a product in a defective condition to be delivered to a consumer is not, I think, at war with the underlying policies of the Code.
I think it was also error for the trial court to grant the motion for directed verdict on the strict liability count. Section 402A, Restatement (Second) of Torts (1965), has been adopted in Florida. West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976). Section 402A(1) imposes liability upon "one who sells any product in a defective condition unreasonably dangerous to the user or consumer for physical harm thereby caused... ." The American Law Institute's comment to the requirement that the product be in defective condition states:
The defective condition may arise not only from harmful ingredients, ... but also ... from the way in which the product is prepared or packed. No reason is apparent for distinguishing between the product itself and the container in which it is supplied; and the two are purchased by the user or consumer as an integrated whole. Where the container is itself dangerous, the product is sold in a defective condition.
Strict liability was first applied to a products liability fact situation in the classic case of Greenman v. Yuba Power Prod., Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963). The decision focused upon the manufacturer's causing an *89 article to be "place[d] on the market, knowing that it is to be used without inspection for defects, [and] proves to have a defect that causes injury to a human being." 13 A.L.R.3d at 1054. While the Greenman decision was concerned with a manufacturer's liability, Section 402A of the Restatement applies to both manufacturers and retailers. Here, of course, only the retailer could be held strictly liable since the manufacturer was not responsible for supplying the defective product. Whether the retailer should be held strictly liable, then, turns not upon his selling only the gasoline  but upon whether he caused the gasoline to be placed on the market in a defective condition which causes injury to the consumer. It is obvious that the doctrine does not separate the article sold from the container. Thus, if the seller causes or permits a flammable material to be dispensed into an unauthorized container, the import of the doctrine is that he is deemed to have sold both.
While there are defenses available to the retailer under strict liability, it is no defense that the user was contributorily negligent by failing to discover the defect in the product or by failing to guard against the possibility of the existence of a defect. West v. Caterpillar, supra at 89-90. Contributory negligence may be asserted by the retailer as a defense in situations where the plaintiff voluntarily assumed the risk or was unreasonable in his use of the product. Id. at 90. It may be that Hurd's use of an unauthorized container to store gasoline was an open and obvious hazard. Nevertheless, the obviousness of the danger is simply part of the defense of contributory negligence and is not an exception to liability. Auburn Mach. Works Co., Inc. v. Jones, 366 So.2d 1167, 1171 (Fla. 1979). Additionally, the affirmative defense of implied assumption of the risk is merged into the defense of contributory negligence, and principles of comparative negligence apply in all cases where such defense is raised. Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977). While the plaintiff may have been negligent in his use of the container, his negligence, if any, would not constitute a bar to having the issues of strict liability and breach of implied warranty tried before a jury.
I agree with the majority that the trial court did not err in instructing the jury that a violation of the statute is negligence and that if the jury determined that appellees had violated the statute, it could then decide whether or not appellees' negligence was the legal cause of the injury complained of. Appellees objected, and now contend on appeal, that the violation of the statute renders a defendant liable regardless of whether the violation proximately caused the injury. I think that deJesus v. Seaboard Coastline Railroad, 281 So.2d 198 (Fla. 1973) is dispositive of this point. deJesus discussed three categories of statutes and the evidentiary significance of each. Appellants essentially argue that Section 526.141 is designed to protect a particular class of persons from its inability to protect itself. Arguably, a violation of this category of statute brings about liability even absent proximate cause. Sloan v. Coit International, Inc., 292 So.2d 15 (Fla. 1974). The courts have held, however, that statutes designed to protect particular classes of persons are basically limited to those protecting minors and other incompetents. See e.g., Tamiami Gun Shop v. Klein, 116 So.2d 421 (Fla. 1959); Sloan v. Coit International, supra; Tampa Shipbuilding and Engineering v. Adams, 132 Fla. 419, 181 So. 403 (1938). deJesus also lists a second type of violation as constituting negligence per se, i.e., a violation of any other statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury. Id. at 201. However, such violations must proximately cause the injury to the plaintiff, or the defendant will not be liable.
I consider that Section 526.141 was at most intended to protect against a particular type of injury and was not intended to protect against the inability of a class of persons to protect itself. I would therefore affirm as to the instruction given.