**Peter W. TIERNEY, Plaintiff,**

v.

**The BLACK BROTHERS COMPANY, Defendant.**

**No. 92–1164–CIV–T–23B.**

United States District Court,
M.D. Florida.

May 19, 1994.

John P. Graves, Jr., Sarasota, FL, for plaintiff.

Harry Pance Smith, McFarlane, Ausley, Ferguson and McMullen, Tampa, FL, for defendant.

## OPINION & ORDER

GAGLIARDI, Senior District Judge.

Plaintiff Peter Tierney moves for judgment notwithstanding the verdict as to percent of fault-finding pursuant to Rule 50 of the Federal Rules of Civil Procedure, Fed. R.Civ.P. 50 (1966 & Supp.1993) ("Rule 50"); the Court construes this as a renewed motion for judgment as a matter of law. In the alternative, Plaintiff moves for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 59 (1994) ("Rule 59"). Defendant The Black Brothers Company opposes Plaintiff's motion, urging the Court to sustain the jury's verdict. The Court held a hearing on April 6, 1994, at which the Court directed both parties to apprise the court fully of their positions with regard to all outstanding issues.

Plaintiff raises several contentions in support of his motion, of which the Court finds the following dispositive: that the Court erred in denying Plaintiff's motion for judgment as a matter of law as to the second affirmative defense raised by Defendant, *see* Part I, *infra*, at 2, 4–5, and thus should amend the judgment to assign full liability to Defendant; that the jury's liability finding as to Plaintiff's employer, Lambaton, Inc. ("Lambaton"), was against the great weight of the credible evidence; and that defense counsel's comments to the jury were improper and highly prejudicial. For the reasons stated below, the Court grants Plaintiff's re-newed motion for judgment as a matter of law as to Defendant's second affirmative defense and holds that Defendant is liable for the entire damage award. The Court also conditionally grants Plaintiff's alternative motion for a new trial, limited to the issues of Defendant's negligence and Plaintiff's damages.

## I. BACKGROUND

Plaintiff brought this action alleging in Count One that Defendant was strictly liable for designing and selling a defective glue spreader and in Count Two that Defendant negligently designed the glue spreader. Defendant alleged in its first and second affirmative defenses respectively that Plaintiff and Lambaton were comparatively negligent.

Plaintiff objected to Defendant's injection of Lambaton into the case, arguing that by failing to expressly designate Lambaton as a potential third-party tortfeasor in the Pre-Trial Statement, Defendant was furtively trying to gain advantage via unfair surprise. Defendant relied on two portions of the Pre-Trial Statement to counter Plaintiff's argument. One sentence reads: "The Defendants have generally denied and affirmatively plead collateral source set off, comparative negligence, causal conduct, causal third party [*sic*], negligent conduct alteration or modification and failure to mitigate damages." (Pre–Trial Statement, Docket Entry # 38, 1–2). The second sentence reads: "It is the contention of [Defendant] that the negligence of Plaintiff, and others for whom this Defendant is not responsible, constitutes the proximate cause of Plaintiff's injury and damages." (*Id.* at 5). With much reluctance, the Court allowed Defendant to proceed with its second affirmative defense based on Lambaton's alleged negligence.

A jury trial commenced in this action on January 13, 1994. Plaintiff presented evidence regarding Defendant's alleged negligence in designing the glue spreader when it knew that there was an unreasonably high risk that injuries would result from the design. With regard to the issue of Plaintiff's training in the proper use of the glue spreader, Plaintiff testified that he followed the directions posted on the machine itself and

the procedures described therein were the ones used by other Lambaton employees. Defendant presented evidence that Lambaton did not provide Plaintiff with a copy of the operation manual.

Defendant sought to move Defendant's Exhibit 13 ("Exhibit 13") into evidence over Plaintiff's objection. Exhibit 13 is a videotape, produced by Lambaton, depicting the glue spreader in operation and the process used to clean the machine; the videotape was produced at least one year after Plaintiff was injured. The parties argued vehemently in support of their respective positions as to the relevance of Exhibit 13, focusing on the probative value of depicting the cleaning process used by Lambaton outside the relevant time frame. After viewing the videotape, the Court admitted the portion of Exhibit 13 which demonstrated the operation of the glue spreader but specifically excluded the portion that showed the cleaning process, warning counsel not to make any references to the latter portion of the videotape.

With regard to Defendant's second affirmative defense that Lambaton was comparatively negligent, Defendant requested that the Court instruct the jury that Lambaton violated chapter 450.061 of Florida Statutes, Fla.Stat. ch. 450.061 (1993) ("ch. 450.061"), by employing Plaintiff (then only 15 years old) for a position that involved the use of power-driven machinery. Defendant argued that violation of the statute was per se negligence, precluding any need for it to produce evidence that Plaintiff's injuries were proximately caused by Lambaton's violation of the statute; that is, Defendant argued that an employer that contravenes ch. 450.061 is strictly liable for a civil action based on its violation. Plaintiff argued that violation of the statute only constituted prima facie evidence of negligence and that Defendant still needed to produce evidence of proximate cause to sustain an actionable negligence theory.

Before submitting the case to the jury, Plaintiff moved for judgment as a matter of law as to his claims and as to Defendant's affirmative defenses, opposing Defendant's request that its affirmative defenses be included in the jury instructions. The Court denied Plaintiff's motion and overruled his objection.

The Court instructed the jury in relevant part as follows:

> [With regard to the Defendant's claim that Lambaton was comparatively negligent, the Defendant must establish:]
>
> 1) That [Lambaton] was negligent; and
>
> 2) that such negligence was a "proximate" or "legal cause" of the Plaintiff's damage.
>
> In connection with Defendant's claim of comparative negligence on the part of [Lambaton], I instruct you that Florida law prohibits an employer from employing a person of Plaintiff's age to work on power-driven machinery. You may not consider this in any way with regard to any negligence of the Plaintiff, but you may consider it with respect to the negligence, if any, of [Lambaton].

(Jury Instructions, Docket Entry # 53, 9–10). During its deliberations, the jury asked to review Exhibit 13, which the Court allowed, and the admissible portion of the tape was shown in open court. At the end of the admitted segment of Exhibit 13, a juror asked whether the rest of the videotape showed the cleaning process at Lambaton. Standing in close proximity to the jury, defense counsel answered, "Yes." Plaintiff objected and moved for a mistrial. The Court sustained Plaintiff's objection but denied his motion for mistrial.

On January 14, 1994, the jury returned a verdict as follows: Defendant was negligent; Plaintiff was not comparatively negligent as alleged in the first affirmative defense; Lambaton was comparatively negligent as alleged in the second affirmative defense; Defendant's and Lambaton's negligence accounted for 10% and 90% of Plaintiff's damages respectively; Plaintiff was entitled to $82,-889.22 in economic and non-economic damages. The clerk entered judgment for Plaintiff against Defendant in the amount of $8,288.92, representing 10% of the total amount of loss sustained by Plaintiff. Plaintiff timely renewed his motion for judgment as a matter of law, or, in the alternative, a new trial.

## II. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

In his renewed motion for judgment as a matter of law, Plaintiff argues that there was no evidence that Lambaton proximately caused his injuries and that the Court erred in not granting his earlier motion to eliminate from this case Defendant's second affirmative defense. Defendant argues that the Court's denial of Plaintiff's motion was proper and should not be disturbed.

### A. Standard for Rule 50 Relief

■■■■ Rule 50 states in relevant parts:

**(a) Judgment as a Matter of Law.**

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find for that party on that issue, the court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party with respect to a ... defense that cannot under controlling law be maintained....

\* \* \* \* \* \*

**(b) Renewal of Motion for Judgment After Trial; Alternative Motion for New Trial.**

Whenever a motion for judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal consequences raised by the motion.... A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict has been returned, the court may, in disposing of the renewed motion ... reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law....

Fed.R.Civ.P. 50 (as amended Apr. 22, 1993, effective Dec. 1, 1993). In deciding whether to grant a motion for judgment as a matter of law, a court must view the evidence together with logical inferences in the light most favorable to the non-movant. *Tate v.* *Government Employees Ins. Co.,* 997 F.2d 1433, 1435–36 (11th Cir.1993). Judgment as a matter of law "will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, to withstand such a motion, the non-movant must produce facts sufficient to create a jury question. *See Tate,* 997 F.2d at 1438.

### B. Lambaton's Alleged Liability for Violating Chapter 450.061

■■■ With regard to the jury's finding that Lambaton was comparatively negligent, Plaintiff essentially argues that though Lambaton violated ch. 450.061 and that such violation was negligence on the part of Lambaton, this did not nullify the common law requirement that Defendant prove Lambaton's violation of the statute proximately caused Plaintiff's injuries. Plaintiff continues that Defendant failed to produce any evidence of proximate cause and therefore the Court erred by not granting him judgment as a matter of law on this issue. In opposition, Defendant argues that the Court did not err in including its second affirmative defense in the jury charge and that the jury's finding of Lambaton's negligence is sound.

Defendant's second affirmative defense based on Lambaton's comparative negligence actually entailed two distinct theories—one based on Defendant's interpretation of ch. 450.061 and the other based on Lambaton's alleged failure to adequately train Plaintiff. As to the first theory, Defendant argues that a violation of statutes such as ch. 450.061, as interpreted by Florida courts, constitutes negligence per se, abrogating any need for it to have produced evidence as to whether Lambaton's violation of ch. 450.061 proximately caused Plaintiff's injuries. Consideration of the parties' arguments regarding Lambaton's negligence for violating ch. 450.061 first requires that the Court discern the nature of this provision under Florida law.

■■■ In evaluating civil claims based on statutory violations, Florida courts first categorize a statute into one of three types be-

fore determining the nature of proof necessary to such actions. The first type of statute is one "designed to protect a particular class of persons from their inability to protect themselves." *deJesus v. Seaboard Coast Line R.R.*, 281 So.2d 198, 201 (Fla.1973). Violation of such a statute obviates any need for proximate cause proof. *Id.; Hurd v. Munford, Inc.*, 378 So.2d 86, 89 (Fla.Dist.Ct. App.1979) (concurring & dissenting opinion). However, the beneficiary of such a statute still needs to establish that he or she is a member of the class that the statute was designed to protect. *See Sloan v. Coit Int'l, Inc.*, 292 So.2d 15, 17 (Fla.1974). The second type of statute is one "which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." *deJesus*, 281 So.2d at 201. Violation of such a statute constitutes negligence per se but requires proof that a plaintiff was a member "of the class of persons that the statute was intended to protect, that [the plaintiff] suffered the type of injury the statute was designed to prevent, and that violation of the statute was the proximate cause of [the plaintiff's] injury." *Id.; see also Hurd*, 378 So.2d at 89. The final type of statute is one that does not fit within either of the aforementioned categories. Violation of such a statute constitutes prima facie evidence of negligence, nothing more; the claimant still needs to prove all elements of actionable negligence. *deJesus*, 281 So.2d at 201; *Hurd*, 378 So.2d at 89. Here, the fundamental dispute between Plaintiff and Defendant is whether ch. 450.061 falls within the second or first category of statutes.

Though no Florida court has specifically ruled on whether or not a cause of action based on a violation of ch. 450.061 requires a claimant to prove proximate cause, the underlying principles used by Florida cases interpreting similar statutes convince the Court that ch. 450.061 requires such proof. In *Sloan*, 292 So.2d 15, the relevant statute forbade " 'the employment of a person between twelve and sixteen years of age in any gainful employment ... during hours when public schools are not in session, unless a special certificate of employment . has been first obtained,' " *id.* at 16–17 (quoting lower court's paraphrase of Fla.Stat. ch. 450.-

111(2)). The Florida Supreme Court viewed this as a general child labor statute that did not require proximate cause proof to sustain a civil cause of action for its violation. *Id.* at 17.

Contrastingly, where a statute protected a particular class against a particular type of injury, a claimant needed to prove proximate cause to support a civil claim based on its violation. *deJesus*, 281 So.2d at 201. In *deJesus*, the statute imposed a duty on railroads to protect automobile drivers and passengers from colliding with un-lit trains blocking highway crossings at night. *Id.* The Florida Supreme Court, in reversing a lower court's finding to the contrary, found that the statute was one designed to protect automobile drivers and passengers against particular types of injuries as opposed to injuries in general, requiring the claimant to prove proximate cause. *Id.*

■ For either type of statute, a party basing its claim on a violation of the statute needs to establish that he or she is a member of the class of people the statute was designed to protect. *deJesus*, 281 So.2d at 201. In a recent case involving civil liability for a statutory violation, *Sogo v. Garcia's Nat'l Gun, Inc.*, 615 So.2d 184 (Fla.Dist.Ct.App. 1993) (per curiam), the court considered a plaintiff's argument that he was entitled to the beneficial use of a statute that he characterized as creating strict liability for its violation, *id.* at 187. The court cursorily rejected the plaintiff's argument because he failed to meet his burden of establishing that he was a member of the class the statute was designed to protect. *Id.* (distinguishing *Sloan*, 292 So.2d at 17, by noting that the *Sloan* plaintiff fit within the class of people the subject statute was designed to protect, *id.*).

The statute in this case, titled "Hazardous occupations prohibited," states in relevant part: "No minor 15 years of age or younger ... shall be employed or permitted or suffered to work in any of the following occupations: (a) [occupations involving] power-driven machinery[.]" Fla.Stat. ch. 450.061(1)(a) (1993). The statute appears to be designed to protect a particular class of people, namely workers under a certain age. *See Id.* How-

ever, unlike the *Sloan* statute, which was designed to generally proscribe child labor during off-schools hours, 292 So.2d at 16–17, ch. 450.061 is designed to protect child laborers against particular types of injuries—those arising from working in hazardous occupations such as ones involving the use of power-driven machinery, Fla.Stat. ch. 450.061. Thus, ch. 450.061 appears to fall within the second category of statutes, requiring proximate cause proof.

 Other provisions in Chapter 450 support this interpretation of ch. 450.061. Chapter 450.081 imposes general limits on the hours that any minor may work and allows for exemptions from such limitations, Fla. Stat. ch. 450.081; this provision appears to be the progeny of the now-repealed *Sloan* statute, *id.* ch. 450.111(2). Chapter 450.132 sanctions the employment of minors in the entertainment industry. *Id.* ch. 450.132. The relevant provisions of chapter 450 collectively viewed indicate that the Florida legislature created two distinct types of statutes governing the employments of minors—those applicable to all child laborers, *id.* ch. 450.081, and those designed to address particular occupations and risks, *id.* chs. 450.061 & 450.132. Though the former type of statute may not require a claimant to prove proximate cause, *see Sloan*, 292 So.2d at 17, the latter type requires such proof, *see deJesus*, 281 So.2d at 201. Therefore, relying on principles used by Florida courts in characterizing the nature of such statutes, the Court holds that plaintiffs basing their claims on a violation of ch. 450.061 need to establish that they are members of the class that the provision is designed to protect and that the statutory violation proximately caused any resulting injuries.

Here, Defendant's theory predicated on Lambaton's violation of ch. 450.061 contains two salient defects. First, Plaintiff, not Defendant, is a member of the class that the statute was designed to protect, *see* ch. 450.061, and thus Defendant is not entitled to claim its benefit, *see deJesus*, 281 So.2d at 201; *Sogo*, 615 So.2d at 187. This flaw in Defendant's argument exists regardless of whether ch. 450.061 is characterized as a statute requiring proximate cause proof. *See*

*Sloan*, 292 So.2d at 17; *deJesus*, 281 So.2d at 201.

Second, even if Defendant was entitled to the beneficial use of ch. 450.061, there was a complete paucity of proof relating to a proximate cause between Plaintiff's minority age and his injuries. Thus, the Court finds that Defendant failed to produce evidence sufficient to create a jury question as to its second affirmative defense under its statutory violation theory.

**C. Lambaton's Alleged Failure to Adequately Train**

 Defendant alternatively argues that Lambaton's negligence stemmed from its failure to provide Plaintiff with the glue spreader's operation manual and that such failure resulted in Plaintiff being inadequately trained. Defendant concludes that Lambaton's dereliction contravened its common law duty to provide employees with a reasonably safe work environment.

Defendant's argument is not sufficiently supported by the evidence produced at trial. Other than the evidence that Plaintiff did not personally receive a copy of the operation manual, there was no proof that Lambaton was negligent under this theory. Defendant did not produce any evidence that Lambaton's failure to provide Plaintiff with the operation manual proximately caused Plaintiff's injuries; the failure to provide Plaintiff with the manual only related to the negligence elements of duty and breach thereof, not the issue of proximate cause. The operation manual would only have pertained to the proximate cause issue if the manual included additional safe-use directions that were absent in the directions posted on the machine. Such variance did not exist, however, because the operation manual directions were materially coextensive with those on the machine, leaving Plaintiff's testimony that he did not deviate from prescribed directions for using the glue spreader uncontroverted. Thus, the Court finds that Defendant failed to produce evidence sufficient to create a jury question as to its second affirmative defense under its inadequate training theory.

## D. Disposition of the Case

█ Plaintiff argues that because the Court's error resulted in an improper apportionment of fault, the just result in this case is to eliminate Lambaton from the case and hold Defendant liable for 100% of the damages award. Defendant does not specifically address this issue, rather relying solely on its contention that the Court did not err in denying Plaintiff's motion to remove from the jury's consideration the issue of Lambaton's alleged negligence.

Though equitable arguments can be made for or against Plaintiff's position, the Court is not forced to confront the issue of whether it can amend the Judgment to assign full liability to Defendant without guidance. In *Hegger v. Green*, 646 F.2d 22 (2d Cir.1981), the Court of Appeals for the Second Circuit considered this very issue. There, a plaintiff brought an action against two defendants—a doctor and a hospital—alleging distinct theories against each defendant. 646 F.2d at 24–25. The jury returned a verdict holding the doctor 25% liable, the hospital 75% liable and reducing the plaintiff's damages by 27% based on a finding of contributory negligence. The hospital and the plaintiff appealed; the doctor did not. *Id.*

The Second Circuit held that the lower court erred in allowing the jury to consider the hospital's negligence and the contributory negligence issues because of a lack of proximate cause evidence supporting either theory. 646 F.2d at 28–29. Facing the issue of how the judgment should be amended, the *Hegger* court reasoned that its holding as to the hospital and the plaintiff still left adequate liability bases for it to sustain the jury's finding as to the doctor. *Id.* at 30. That court continued that because the doctor did not appeal the jury's verdict, he was not entitled to the benefit of the hospital's successful appeal where the basis for the latter's success did not " 'wipe[ ] out all basis for recovery against [the] non-appealing ... defendant.' " *Id.* (quoting *In re Barnett*, 124 F.2d 1005, 1009 (2d Cir.1942)); *accord Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 742–45 (5th Cir.1980) (non-appealing defendant entitled to benefit from appealing defendant's success where former's liability

was entirely derivative of latter's). The Second Circuit concluded that the doctor was liable for 100% of the amended damage award even though the jury only found him liable for 25% of 73% of the damage award. *Id.* at 31; *see also McDermott, Inc. v. AmClyde*, —— U.S. ——, —— n. 10, 114 S.Ct. 1461, 1466 n. 10, 128 L.Ed.2d 148 (1994) (in admiralty context, allowing for possibility of assigning, per a jury's findings, that portion of fault attributable to one co-defendant to the other co-defendant where the lower court erred in allowing the issue of the former's liability to be considered by the jury; sanctioning this possibility even though latter defendant would be liable for the full amount of liability apportioned to defendants).

The conundrum confronting the Court parallels the one faced by the *Hegger* court. Similar to that case, the Court here erred in allowing the jury to consider the issue of Lambaton's negligence in the absence of proximate cause evidence, the jury apportioned liability between Defendant and Lambaton, and Defendant did not challenge the jury's liability findings as to itself or Plaintiff. *See Hegger*, 646 F.2d at 25–29. Furthermore, the Court's error as to Lambaton could not have affected the jury's finding of liability as to Defendant for the theories against Lambaton and Defendant were mutually exclusive. *See Id.* at 30.

Finding no basis for doing so, the Court refrains from disturbing the jury's findings that Defendant was liable and Plaintiff was not. However, because Lambaton was improperly included in the case, the Court is compelled to overturn the jury's finding as to Lambaton and hold that Defendant should bear full responsibility for Plaintiff's damages. Defendant's prognostication as to whether the Court would grant Plaintiff's post-trial motion was a calculated but unwise risk, for which it should bear full responsibility. *See Hegger*, 646 F.2d at 30 n. 10. Finding it inequitable to deprive Plaintiff of his successful prosecution of the case against Defendant, *see id.*, the Court grants Plaintiff's renewed motion for judgment as a matter of law as to Lambaton and holds that Defendant is liable for 100% of Plaintiff's damages.

## III. ALTERNATIVE MOTION FOR A NEW TRIAL

 Plaintiff moves in the alternative for a new trial, arguing that the Court's inclusion of Lambaton in the jury instructions was erroneous, that the jury's fault-finding as to Lambaton was against the great weight of the credible evidence and that defense counsel's improper conduct deprived him of his right to a fair trial, untainted by impropriety.

### A. Standard for Rule 59 Relief

Rule 59(a)(1) states in relevant part:

A new trial may be granted to all or any parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

Fed.R.Civ.P. 59(a)(1) (1994). A trial court must rule on an alternative new trial motion when raised by a party renewing its motion for judgment as a matter of law, but its ruling on the new trial motion is a conditional one having no effect unless the grant of judgment as a matter of law is vacated or reversed on appeal. *Cook v. Carolina Freight Carriers Corp.*, 867 F.2d 1266, 1267 n. 1 (11th Cir.1989); *see* Fed.R.Civ.P. 50(c). A court's grant of a new trial motion may be predicated on various grounds, including: erroneous jury instructions, *Stuckey v. Northern Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir.1989); a finding that a jury's verdict was against the great weight of the evidence, *Rosenfield v. Wellington Leisure Prods.*, 827 F.2d 1493, 1497–98 (11th Cir. 1987); misconduct of trial counsel, *McWhorter v. City of Birmingham*, 906 F.2d 674, 676–678 (11th Cir.1990); or an amalgamation thereof, *Deas v. Paccar, Inc.*, 775 F.2d 1498, 1504 (11th Cir.1985). A court may grant a new trial on one or more issues as long as the new trial issues are "separate from all other issues and the error requiring a new trial does not affect the determination of any other issue[s]." *See FIGA v. R.V.M.P. Corp.*, 874 F.2d 1528, 1533 (11th Cir.1989). When trial counsel makes repeated arguments or comments regarding evidence that directly contravenes a court's earlier ruling as to the admissibility of the subject evidence, such conduct constitutes clear, prejudicial misconduct and constitutes a ground for granting a new trial. *McWhorter*, 906 F.2d at 677.

### B. Erroneous Jury Charge; Verdict Against the Great Weight of the Credible Evidence

For the reasons stated above, the Court agrees that it erred in including Defendant's second affirmative defense that Lambaton was comparatively negligent in the jury instructions. *See* Parts II(B) & (C), *supra*, at 999–1002. Given the gravity of such an error, the Court's jury charge was incurably erroneous. Furthermore, given the lack of sufficient proof as to Lambaton's alleged negligence, the Court finds that the jury's verdict that Lambaton was 90% liable for Plaintiff's damages is against the great weight of the credible evidence. Complementarily, given the plethora of evidence as to Defendant's negligence, the Court finds that the jury's verdict that Defendant was 10% liable for Plaintiff's damages is against the great weight of the credible evidence.

### C. Improper Conduct of Defense Counsel

 Plaintiff argues as another ground in support of his alternative new trial motion that defense counsel's repeated comments relating to Lambaton's alleged failure to adequately train Plaintiff were highly improper and prejudicial. Plaintiff specifically objects to defense counsel's: (1) repeated allusions to videotapes, such as Exhibit 13, that depict the process used by Lambaton to clean the glue spreader ("Plaintiff's objection (1)"); (2) references to the process used in cleaning the glue spreader in the absence of any admitted evidence regarding the cleaning process either Lambaton or Plaintiff actually used during the relevant time frame ("Plaintiff's objection (2)"); (3) comments implying that allowing a person of Plaintiff's age to clean the machine without more training constituted causal negligence on the part of Lambaton ("Plaintiff's objection (3)"); (4) affirmative response to the juror's inquiry as to whether the remainder of Exhibit 13 demon-

strated the cleaning process used at Lambaton, asked by the juror after re-viewing the admitted portion of the videotape ("Plaintiff's objection (4)"). Plaintiff repeatedly raised objections to any such references, which the Court consistently sustained.

Defendant admits its counsel made remarks regarding the cleaning process used by Lambaton as alleged in Plaintiff's objection (1), but argues that any impropriety was cured by the Court's instructions. Defendant contends that Plaintiff's objection (2) lacks merit because such comments were proper under its failure to adequately train theory of Lambaton's negligence. As to Plaintiff's objection (3), Defendant argues that such comments were proper under its violation of ch. 450.061 theory of Lambaton's negligence. Finally, Defendant's claims that defense counsel's affirmative response to the juror's question referred to in Plaintiff's objection (4) was inadvertent.

The Court finds that defense counsel's conduct during trial was improper and prejudicial. Defendant's response to Plaintiff's objection (1) is not fully persuasive. The Court's jury charge included a statement that the jury is to make its determination based only on the evidence admitted in the case and the Court sometimes gave cautionary instructions after sustaining Plaintiff's objections to defense counsel's improper remarks. Such curative instructions, however, are of dubious value in light of the incessant, pervasive nature of defense counsel's misconduct. *See O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir.1977).

Defendant's argument as to Plaintiff's objection (2) is specious. Defense counsel's comments are not improper because of their purported relation to Defendant's failure to train theory; rather, such comments are inappropriate because they relate to the actual cleaning process used by Lambaton even though no relevant foundation evidence regarding this process was offered or admitted in the record.

As to Plaintiff's objection (3), Defendant's response lacks merit. Defense counsel was pontificating on factual and legal questions in asserting a causal connection between Lambaton's statutory violation and Plaintiff's injuries. Such comments are inappropriate because defense counsel was supplanting the jury's fact-finding role and the Court's role of expounding on the applicable law. Furthermore, such misconduct is particularly egregious and pernicious in light of Defendant's failure to produce any proximate cause evidence supporting its statutory violation theory.

Defendant's response to Plaintiff's objection (4) is unpersuasive because the Court views with some suspicion the claim that defense counsel's response to the juror was inadvertent given the earlier, extensive colloquy on this specific issue and the Court's explicit order to avoid any references to the cleaning process used at Lambaton after Plaintiff's injuries occurred. Additionally, defense counsel's misconduct is particularly inexcusable because Defendant was allowed to introduce Lambaton into the case only through a tortured reading of the Pre–Trial Statement. Given that Lambaton's alleged negligence should not have been given any consideration by the jury, the Court is left with serious misgivings as to how defense counsel's misconduct might have infected the jury's liability findings and has grave doubts as to whether Plaintiff received substantial justice.

Therefore, should the Court's granting of Plaintiff's renewed motion for judgment as a matter of law as to Defendant's second affirmative defense be vacated or reversed on appeal, the Court conditionally grants Plaintiff's alternative motion for a new trial based on the following grounds: that the Court erred in charging the jury as to Defendant's second affirmative defense; that the jury's verdict as to that defense was against the great weight of the credible evidence; and that defense counsel's misconduct prejudiced Plaintiff's right to substantial justice at trial. The Court holds, however, that the new trial should be limited in scope. Finding no basis for disturbing the jury's finding that Plaintiff was not comparatively negligent but being unable to confidently discern whether the Court's and jury's errors and defense counsel's misconduct affected both the liability finding against Defendant and the damages award, the Court's conditional grant of a new

trial is limited to the following issues: (1) whether Defendant is liable for Plaintiff's injuries; and (2) if Defendant is liable, what amount and types of damages would adequately compensate Plaintiff for his injuries.

## IV. CONCLUSION

The Court grants Plaintiff's renewed motion for judgment as a matter of law as to Defendant's second affirmative defense pursuant to Rule 50(a) & (b), overturning the jury's liability-assessment against Lambaton. The Court further holds that Defendant is liable for 100% of Plaintiff's damages. Finally, the Court conditionally grants Plaintiff's alternative motion for a new trial as to Defendant's liability and Plaintiff's damages pursuant to Rules 50(b) & (c) and 59(a)(1). Let the clerk amend the judgment accordingly.

So Ordered.